# Black Eagle Coal Corporation, et al. v. Smith's Trustee.

(Decided October 14, 1927.)

## Appeal from Bell Circuit Court.

1. Corporations.—Provision of contract between common and preferred stockholders, that 80 per cent. of sale price of corporation's lands should be applied to retiring preferred stock, held to give preferred stockholders a lien on the lands, not as against creditors, but as against common stockholders, for 80 per cent. of prices fixed.

2. Corporations.—Contract providing that 80 per cent. of minimum sale price of corporation's land should be applied to retiring preferred stock, and all moneys realized in excess thereof retained by corporation or paid as dividends on common stock until holders received sum paid therefor, held to authorize application of proceeds of any part of tract sold to retirement of preferred stock until 80 per cent. of minimum price was paid to holders thereof, not use of all money received in excess of such price on each sale of one or more acres of any tract by common stockholders to pay dividends to themselves.

3. Corporations.—Where common stockholders, through honest mistake, had construed contract with preferred stockholders relative to application of proceeds of sale of corporate property to retire preferred stock in such a way as to result in loss to preferred stockholders, and there was nothing to suggest that property would not be managed in accordance with law and authorative judicial construction of the contract, judgment appointing receiver was reversed.

JAMES H. JEFFRIES and LOW & BRYANT for appellant.

W. T. DAVIS, B. J. BETHURUM and FORESTER & CARTER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing in part and affirming in part.

Upon the application of the trustee for Noble Smith et al. (holders of 400 shares of preferred stock of the Black Eagle Coal Corporation), the property of that corporation was placed in the hands of a receiver. By section 298 of the Civil Code of Practice, that action is a final order. The Black Eagle Coal Corporation, A. C. Carr, N. M. Shelburne, and A. G. Shelburne (owners of all the common stock of the Black Eagle Coal Corporation) have appealed from that order.

This litigation is the outgrowth of appellants' erroneous construction of a contract made October 29,

1921. The corporation was a holding corporation. It then owed no money, and the parties then contemplated a sale of its property, a distribution of its assets, and its dissolution. There was then outstanding $620,000 face value of the stock of the Black Eagle Coal Corporation. Of this, $360,000 face value was common stock and the other $260,000 was preferred stock. A. C. Carr et al. were negotiating for the purchase of all this common stock and they then proposed to the preferred stockholders a contract which was accepted and agreed to by the appellees. Among the provisions of this contract were these: That the property of this corporation shall be divided into eight parcels or tracts containing approximately the acreage named below, and minimum prices were fixed on these various tracts. Seventy-five dollars per acre was the price fixed on tract 1 of 600 acres, and tract 8 of 400 acres; $100 per acre was the price put on tract 2 of 900 acres, tract 5 of 800 acres and tract 7 of 100 acres; $150 per acre was the price fixed on tract 3 of 600 acres, tract 4 of 100 acres and tract 6 of 600 acres. These common stockholders were given the right to sell the property of this corporation at the above or better prices. It provided that, when a sale was made, 80 per cent. of the sale price of these lands at the above figures should be applied to retiring and paying off the preferred stock.

Ordinarily, preferred stock has no lien on the assets of a corporation, and, ordinarily, its rights are limited to a preference in the declaration of dividends; but, by this contract, this preferred stock acquired something more than a preference in the declaration of dividends, and by it there was made a specific appropriation of 80 per cent. of the sale price of these properties to this preferred stock.

> "In the absence of charter or statutory prohibition, a corporation having unrestricted power to issue preferred stock may make such stock a lien on its property, as well as its net earnings, as against the holders of its common stock; no rights of creditors being involved." 14 C. J. 414, sec. 570.

Our attention is called to no charter or statutory prohibition, and the effect of this provision, as between these stockholders, no rights of creditors being involved, was to give to the preferred stockholders a lien on these lands, not as against creditors, and only as against the common stockholders, for 80 per cent. of the prices fixed.

This contract further gave certain rights to the holders of the common stock, and among those rights was this: That all moneys arising from the sale of these lands for more money than these prices fixed were to be retained by the corporation for its purposes, or to be paid as dividends to the holders of the common stock, until they received $60,000, the sum which they paid for this $360,000 of common stock. The corporation and its common stockholders misconstrued this contract. To illustrate their misconstruction, we will take for example tract 8, which contained 400 acres, the price of which was fixed at $75 per acre, or a total of $30,000. The true construction of this contract is that, when any part of tract 8 is sold, the proceeds must be applied to the retirement of this preferred stock until $24,000 (80 per cent. of $30,000) had been paid to the preferred stockholders. The erroneous construction adopted by the corporation and the common stockholders is that, when any one or more acres of any one of these tracts is sold at a price in excess of the stipulated minimum price per acre, all the money arising from this sale in excess of 80 per cent. of this minimum price may be used by the common stockholders to pay dividends to themselves. Thus out of tract 8, which it was stipulated should be sold for $75 per care, or $30,-000, 20 acres might be sold at $500 per acre, producing $10,000. Here is the disposition they would make of this $10,000 under their construction. This tract was to be sold at $75 per acre. At that price these 20 acres would yield $1,500; 80 per cent. of that would be $1,200, that they would set aside for the preferred stockholders. Deducting this $1,200 from the $10,000, they would have a balance of $8,800, which the common stockholders would claim as their own, when, perhaps, the remaining 300 acres would be utterly worthless. If such a sale had been made, the whole of this $10,000 should be paid to the preferred stockholders and no part of the sale price of this tract 8 should go to the corporation until the preferred stockholders have received $24,000.

By the erroneous construction adopted by the common stockholders and their procedure thereunder, they have improperly appropriated to themselves from the sales of this land, several thousand dollars. If the court had allowed them to so continue, it would have resulted in serious loss to the preferred stockholders. The trial court probably reached the same conclusion we

have. By this contract, as between these stockholders, in the absence of any claim of creditors, and not as against creditors, these preferred stockholders acquired a lien on these properties as stated above, and, as their interests were being imperiled by the course pursued by the common stockholders as a result of the misconstruction of this contract, the court probably felt that the appointment of a receiver was necessary. There is nothing to suggest that this construction of this contract made by the common stockholders was not an honest, though mistaken, construction, and nothing to make us fear that an honest effort will not be made to manage this property, sell it, and pay out the proceeds as we have indicated herein should be done, and if, in good faith, the common stockholders do endeavor so to do, they will be much hampered by having this property in the hands of a receiver. Therefore this judgment, so far as the appointment of a receiver is concerned, and no further, is reversed, but such reversal is without prejudice to the rights of the preferred stockholders to ask for a receiver, if the common stockholders do not endeavor in good faith to administer this property as herein indicated. In all other respects, the judgment is affirmed.

In the taxation costs on this appeal, the clerk will tax and charge to the common stockholders two-thirds thereof and to the preferred stockholders one-third.